# WHEELING.

## Ex Parte Hill.

Decided June 7, 1902.

1. Bail After Conviction.

    After conviction of felony there can be no allowance of bail by this Court or a circuit court, except that for some cause extraordinary, not growing out of, but independent of, the criminal act, as for sickness, bail may be granted before conviction, or after it, pending a writ of error and before actual commitment to the penitentiary. The party must be laboring under a present painful, severe and dangerous disease either caused or aggravated by his imprisonment, and there must be strong probable reason, not mere fear, but based on facts, to apprehend that continued imprisonment will be fatal, or at least cause permanent grave injury to health. (p. 538).

2. Bail by Supreme Court.

    The Supreme Court of Appeals has jurisdiction to award a writ of *habeas corpus* having for its sole purpose the obtaining of bail in a felony case, and to grant bail upon it. Bail may be granted on mere motion in the circuit court under the statute. (p. 539).

Application of A. T. Hill for a writ of *habeas corpus* to be allowed bail.

*Writ Refused.*

Brannon, Judge:

Hill having been convicted and sentenced to the penitentiary for felony for receiving stolen goods, obtained a writ of error, and then petitioned the circuit court of Marion County to be allowed bail until the decision of the writ of error, and that court having refused bail, he comes to this Court by petition for a writ of *habeas corpus* in order to have this Court to grant him bail.

The case does not involve the question discussed in *Ex Parte Eastham*, 43 W. Va. 637, whether upon *habeas corpus* seeking bail only this Court can grant bail before conviction. In that case the indication was, I think now a correct indication, that such jurisdiction exists. Nor does this case involve the question of the power of this Court, when it has before it a *habeas*

*corpus* seeking discharge on the claim of unlawfulness of imprisonment, and refuses discharge, to admit to bail. I think that in such case it can, in a proper case grant bail. Hurd Habeas Corpus 432; 3 Am. & Eng. Ency. L. (2d Ed.) 666.

The Code of 1899, section 6, chapter 111, expressly recognizes this power in saying that upon such a writ the court "shall either discharge or remand him or admit him to bail." The present case presents the question whether this Court can upon a writ of *habeas corpus* not seeking discharge from unlawful imprisonment, but seeking only bail after conviction of felony pending a writ of error, grant such bail. We may safely say that by common law bail might in proper cases, in sound discretion, be granted at any stage of the case, before or after indictment, indeed after conviction pending appeal, so application is made before actual commitment to the prison under the sentence. 3 Am. & Eng. Ency. L. (2d Ed.) 671, 673; Ency. Pl. & Prac. 206; Hurd on Hab. Corp. 435, 444; Church Hab. Corp. ss. 417, 419; Ralpaje Crim. Proced. s. 37. But in Virginia the Code of 1819, chapter 167, section 1, allowed the general court or superior court to "admit to bail any person before conviction:" and section 2, being an act dating back to 1785, provided that " no person shall be bailed after conviction of any felony." Thus far back it was the policy of Virginia not to bail after conviction. The Code of 1849 pursued this policy in section 6, chapter 204 by allowing justices to bail a person "charged with, but not convicted of an offence," and by saying "a circuit court, or any judge thereof, may admit any person to bail before conviction." The West Virginia Code likewise always has limited the power of justices to bail persons "charged with, but not convicted of an offence not punishable with death," and grants to circuit courts and their judges power "to bail before conviction." Code, chapter 156, section 6. It is noted that the positive provision of the Code of 1819 against bail to one convicted of felony is omitted in later Virginia and West Virginia codes, and from this counsel argue that that prohibition having been repealed, the common law is revived, and that bail may be allowed after conviction. We do not concur in this position. That express prohibition was surplusage and tautology, because the words of section 1 "may admit to bail any person before conviction," tell plainly enough the intent to limit bail to one not convicted, and deny it to one who can no

longer be presumed to be innocent, but who is guilty by judicial ascertainment. The expression of power to bail before conviction excludes the power to bail after conviction. If the lawmaker intended to grant bail after conviction, why does not the statute simply say that a court "may admit any person to bail" omitting the words "before conviction"?

These words mean something. They can have no other meaning than to limit power to bail to cases before conviction. The very fact that the common law allowed bail after conviction shows an intent by these words "before conviction" to depart from the common law. The Legislature has, as to this matter, laid down the rule, and no court can repeal its plain words. A party convicted still remains presumably guilty during his appeal until reversal, and the law intends to take no security from him, as the temptation to defeat the law by escape is then greater than ever.

In most of the states right to bail is given by constitution with exception of certain cases; but in this State such is not the case, and it is a matter of sound discretion to grant or refuse. And where such constitutional provision exist they seem to have no operation after conviction to give bail as a matter of right after conviction, but only as of discretion. 3 Am. & Eng. Ency. L. (2d Ed.) 675; Church on Hab. Corp., ss. 417, 418; Hurd on Hab. Corp. 445.

But whilst it seems clear that our statute limits bail to persons not yet convicted, still that applies only to the circumstances connected with the offense, is tested by the party's guilt or innocence, and the statute does not, in such limitation, touch those cases where extraordinary circumstances, independent of the merits of the case, call for bail. "The illness of the prisoner is such a circumstance, and the humanity of our law makes it a consideration which should, under all circumstances, regardless of the charge upon which the prisoner is confined, or the stage of the proceeding at which the application is made, influence the court to exercise its discretion and admit to bail." 3 Am. & Eng. Ency. Law, 677; Church Hab. Corp. s. 410.

Cases of binding authority upon us make grave sickness an exceptional ground of bail. *Semmes' Case,* 11 Leigh 665; *Archer's Case,* 6 Grat. 705.

We do not fail to realize that it may be charged that we are putting an exception into the statute not found in it, but con-

siderations of very apparent force answer this charge. The word "conviction" in the statute shows that the bail spoken of is that relating to the criminal act, tested by its circumstances. Again, I think that this is an instance calling for the application of the rule of statutory construction that though a thing may be within the letter of a statute, yet if it is not within its spirit, the statute does not include it.

Now, it seems reasonably probable that the Legislature did nor for instance mean to disable a court granting a suspension to enable the convict to apply for a writ of error, from allowing bail where the bail is not tested by his guilt, but he is dying from imprisonment and disease. Under this rule grave necessity for bail must be shown. In the *Semmes' Case* it is laid down that the prisoner must be "laboring under a present painful, severe and dangerous disease, caused by his imprisonment, and likely to be so aggravated by a continuance thereof as probably to terminate fatally."

The evidence should clearly show that death or permanent ill health will result from a continuance of confinement. 3 Ency. Pl. & Prac. 212. "It is only where illness has been caused or aggravated by the imprisonment, and there is probable reason to apprehend that further imprisonment would be fatal, or at least cause permanent injury to health, that the application should be granted." 3 Am. & Eng. Ency. Law 677. The case does not come up to this standard. It is shown by some affidavits that Hill is inclined to stoutness or obesity and his heart affected by fatty degeneration, and that in the opinion of two physicians continued confinement "for a considerable time" would permanently injure his health and cause death. How long will it take to produce this result? It is mere opinion. It is not shown that his condition was caused by imprisonment. And a physician attending the jail, the health officer of the county, says he thinks the ailment attributed by those physicians to confinement is curable by treatment, and not likely to produce the danger feared. So as to danger in future there is conflict of medical opinions. And should the prisoner grow worse, the circuit judge can again consider the case, and I do not see why, if the jail is bad and dangerous, removal could not be made under sections 47, 48, chapter 41, Code. There is difference of opinion as to the condition of the jail.

Does this Court have jurisdiction to grant bail in a proper

case? I have had, and have yet, some question, because the Code gives a circuit court jurisdiction; but the constitution gives this Court original jurisdiction in *habeas corpus,* and that writ has been long used as a process to obtain bail.

We refuse the writ.

*Writ Refused.*