STATE *ex rel.* ALLEN C. BENNETT

*v.*

WILLIAM H. WHYTE, *Superintendent, Huttonsville*

*Correctional Center*

(No. 14539)

Decided September 18, 1979.

*Radosh & Askin and Steven M. Askin* for relator.

*Chauncey H. Browning,* Attorney General, *David P. Cleek,* Assistant Attorney General, for respondent.

Miller, Justice:

In this original writ of habeas corpus, relator, Allen C. Bennett, challenges two post-conviction orders of the Circuit Court of Jefferson County. The effect of the two orders was to deny a stay or postponement of the execution of relator's criminal sentence and to refuse to reduce the $50,000 bail set by the court. At issue is (1) whether W. Va. Code, 62-7-1, in providing for postponement of execution of sentence to allow for preparation of appeal, imposes a mandatory duty upon the trial judge to grant postponement upon request; and (2) whether, under the circumstances of this case, post-conviction bail of $50,000 is excessive.

## I

### RIGHT OF POSTPONEMENT OF SENTENCE

The provision regarding postponement of the execution of the sentence to allow for preparation of appeal is set forth in W. Va. Code, 62-7-1.[1] Expressed in mandatory language, the provision states that upon application of any person entitled to appeal, the circuit court "shall make an order postponing the execution of the sentence."[2] In *Ex parte Doyle*, 62 W. Va. 280, 57 S.E. 824 (1907), *overruled on other grounds, State ex rel.*

---

[1]We use the statutory term "postponement of execution of the sentence" instead of the more common term "stay of execution." The terms are identical.

[2]W. Va. Code, 62-7-1, provides in relevant part:

"Upon the application of any person entitled, under the provisions of article five [§ 58-5-1 et seq.] chapter fifty-eight of this Code, to an appeal or writ of error from the judgment [of] a circuit court convicting him of any offense or crime, the circuit court or the judge thereof in vacation, shall make an order postponing the execution of the sentence for a reasonable time to enable him to prepare and present bills of exceptions and to secure a transcript of the evidence before the court at the trial, and until a reasonable time beyond the first day of the next term of the supreme court of appeals."

*Blankenship v. McHugh,* ____ W. Va. ____, 217 S.E.2d 49 (1975), this Court held that the right of a criminal defendant to a postponement of the execution of his sentence to enable him to prepare for appeal was mandatory and not subject to the discretion of the trial court:

> "We see the word 'shall' in the first clause. We interpret this clause as clearly obligatory and mandatory. The court has no discretion to refuse a suspension of the sentence. In felony cases such is surely the construction from the word 'shall,' and because it is a provision in favor of suspension of enforcement of the judgment to allow time necessary to prepare the record to enable a person to have recourse by a writ of error granted by law to a person to save his life or liberty from erroneous conviction." [62 W. Va. at 181, 57 S.E. at 824]

*Doyle* involved the 1906 counterpart to W. Va. Code, 62-7-1 [Chapter 160, Section 2 of the 1906 Code]. The 1906 statute, however, contained a significant difference— that, as to any conviction which carried the death penalty or confinement in the penitentiary, the "court *shall* postpone the execution of its sentence," and as to any other criminal conviction, the court *"may* postpone the execution" to enable preparation of an appeal. [Emphasis supplied] Under this statute, it would appear that in felonies a postponement was mandatory, and in misdemeanor convictions it was discretionary. *Doyle* involved a misdemeanor conviction of the unlawful selling of liquor, and yet the court held that a postponement of sentence was mandatory.

The *Doyle* Court relied on a vigorous dictum by Judge Dent, who discussed this same statute in *State ex rel. Stafford v. Hawk,* 47 W. Va. 434, 34 S.E. 918 (1900):

> "This, however, should be a warning to the circuit court to grant to persons convicted of felony the reasonable time provided by statute, and compel its officers to discharge their duties so as to facilitate, instead of delaying, their applica-

tions for writs of error to this court. Neither a court nor any of its officers should be permitted to indirectly deprive a prisoner of his statutory rights." [47 W. Va. at 436, 34 S.E. at 918]

The 1931 revision of the West Virginia Code gave the statute its present form, which conforms with the decision in *Doyle* and makes mandatory a postponement of the execution of a criminal sentence, whether for a felony or a misdemeanor, for preparation of an appeal.

In interpreting a postponement-of-sentence statute somewhat similar to our 1906 statute, the Virginia court adopted a position similar to that of *Doyle*, by holding that the refusal to grant a postponement of the execution of a criminal sentence is error because it deprives the defendant of his right to an appeal. *Dodson v. Commonwealth*, 185 Va. 57, 37 S.E.2d 744 (1946); *Ramey v. Commonwealth*, 145 Va. 848, 133 S.E. 755 (1926).

The trial court raised the possibility that, if the sentence were postponed, the relator might gain release on bail and commit subsequent offenses. These considerations may affect the decision to grant post-conviction bail, but they are not relevant to the postponement issue in the face of the mandatory statutory language.

The trial court viewed W. Va. Code, 62-7-1, to be limited to those cases where we have granted an appeal, rather than to those cases where application for appeal is being prepared. However, such a construction would be inconsistent with the plain language of the statute, which states that the postponement of the sentence is "to enable him to prepare and present bills of exceptions and to secure a transcript of the evidence." All of these matters are preliminary to the actual presentation of the appeal to this Court.

Furthermore, nothing in our prior opinions suggests such a limitation. Both *Ex parte Doyle, supra,* and *State ex rel. Stafford v. Hawk, supra,* discussed the statute in terms of defendants who were in the process of petitioning for writ of error.

We, therefore, conclude that W. Va. Code, 62-7-1, is mandatory, and that any person under a judgment of conviction is entitled to a postponement of the execution of his sentence "for a reasonable time to enable him to prepare and present bills of exceptions and to secure a transcript of the evidence before the court at the trial, and until a reasonable time beyond the first day of the next term of the supreme court of appeals."

Postponement of the execution of the sentence does not entitle the defendant to be released from confinement. In the absence of appropriate bail, he is subject to detention in jail during the pendency of the appeal.

## II

## BAIL

The Circuit Court also denied the relator's motion to reduce the post-conviction bail bond of $50,000. The court held a bail reduction hearing in accordance with our holding in *State v. Gary*, ____ W. Va. ____, 247 S.E.2d 420 (1978).

The record of the bail hearing discloses that relator was indicted in January of 1978 on two counts of delivery of controlled substances, marijuana and ethchlorvynol. Both were felonies. At the time of the indictments, the relator was in Florida and became aware of the indictments when he was arrested on a fishing violation. Relator waived extradition proceedings, and was returned to Jefferson County and released on a $5,000 bail bond covering both felonies.

After his release on bail, the relator was employed by his brother as a mason. He made nine pretrial appearances, and on March 1, 1979, appeared for trial and was convicted on the delivery of marijuana charge. The court then increased the bail bond to $10,000. Relator remained in jail until March 26, 1979, when he was able to meet the increased bail amount. The court had also imposed a condition that relator make daily contact with the Jefferson County Sheriff's Office to indicate his con-

tinuing presence within the county, and he met this condition.

On March 29, 1979, the relator was convicted on the second charge of delivery of ethchlorvynol. He was continued on the same $10,000 bail bond. On May 1, 1979, he was sentenced to consecutive penitentiary terms of one to five years on the marijuana conviction and one to three years on the ethchlorvynol conviction. His bail was then set at $50,000.

At the bail reduction hearing, relator's mother and brother both testified that, except for the four-month period in Florida in early 1978, the relator had been a life-long resident of West Virginia. Relator's wife lives and works in Jefferson County. His mother, brother and sisters all live in Jefferson County. His brother works in the masonry business in Jefferson County and indicated a willingness to continue to employ the relator.

The relator as a juvenile had a 1967 breaking and entering conviction in which he was tried as an adult. He also has a number of traffic violations which were misdemeanors. In 1972, relator was convicted of armed robbery and served twenty-two months in prison before his conviction was set aside in *State v. Bennett*, _____ W. Va. _____, 203 S.E.2d 699 (1974), *overruled in part*, *State v. Adkins*, _____ W. Va. _____, 253 S.E.2d 146 (1979). On remand, the State twice sought to reconvict the relator, but in both instances a hung jury resulted. In 1977 the relator was convicted of possession of marijuana, a misdemeanor.

Perhaps the principal reason why the court denied the motion for reduction of bail was the relator's status as a fugitive from justice at the time of his arrest. The indictments, returned on January 17, 1978, were based on transactions occurring in June of 1977. At the bail reduction hearing, relator denied that he and his wife had moved to Florida to avoid arrest on the indictments. He asserted that upon learning of the indictments, he waived extradition. During the period he was in Florida,

he made a telephone call to his mother in Jefferson County, but both deny that there was any conversation about the pending indictments.

The court advanced, as additional reasons for the denial of reduction in bail, that the relator had loose community ties in Jefferson County, that his previous misdemeanor conviction for possession of marijuana suggested a high probability of continued drug offenses, and that post-conviction bail inherently requires higher standards.

This Court discussed standards for post-conviction bail at some length in *State ex rel. Hutzler v. Dostert,* ___ W. Va. ___, 236 S.E.2d 336 (1977). There, we recognized that the 1965 enactment of our present bail statute, W. Va. Code, 62-1C-1, *et seq.,* considerably liberalized our bail procedures and made a distinction between the right to bail prior to and after conviction.[3] This distinction is that in cases not punishable by death or life imprisonment, the right to some amount of bail is absolute before conviction. After conviction, however, the right to bail is discretionary. After a conviction involving life imprisonment, a person is not entitled to post-conviction bail. *Conley v. Dingess,* ___ W. Va. ___, 250 S.E.2d 136 (1978).

Our bail statute also recognizes that: "The bail as initially given may continue in effect pending indictment, arraignment, continuance, trial and appeal after conviction, as the court may direct." W. Va. Code, 62-1C-6. Moreover, the statute specifically acknowledges that

---

[3]W. Va. Code, 62-1C-1(a) and (b) provide:

"(a) A person arrested for an offense not punishable by death or life imprisonment shall be admitted to bail by the court or justice. A person arrested for an offense punishable by death or life imprisonment may, in the discretion of the court that will have jurisdiction to try the offense, be admitted to bail.

"(b) Bail may be allowed pending appeal from a conviction for an offense not punishable by death or life imprisonment. The court or judge allowing bail pending appeal may at any time revoke the order admitting the defendant to bail."

bail is defined as "security for the appearance of a defendant." Code, 62-1C-2. The bail statute also provides certain criteria for fixing bail in W. Va. Code, 62-1C-3:

> "The amount of bail shall be fixed by the court or justice with consideration given to the seriousness of the offense charged, the previous criminal record of the defendant, his financial ability, and the probability of his appearance."

These are not the only factors which should be considered in granting post-conviction bail. The pendency of other charges against the defendant, the amount of the individual's pretrial bond, the regularity of his preconviction appearances, the severity of the sentence imposed, and the likelihood of meritorious grounds for an appeal are all relevant factors to weigh in regard to post-conviction bail. Also pertinent are the defendant's community ties, his age, and his health. Because each bail case may involve unique factors, we stated in *Hutzler* that more precise rules cannot be formulated.

There is no doubt that post-conviction bail is generally less liberally accorded than in the pretrial state. 8 Am. Jur. 2d *Bail and Recognizance* § 33 (1963). This different treatment is perhaps predicated on the theory that the conviction has undercut the presumption of innocence and that the defendant has heard judgment pronounced by the jury, and therefore may be more likely to flee. The primary test still remains the likelihood of the defendant's appearing to answer further proceedings.

Our rule pertaining to review of bail recognizes that the trial court's discretion should not be disturbed unless the record reveals an abuse of that discretion. *State ex rel. Hutzler v. Dostert, supra; State ex rel. Ghiz v. Johnson,* 155 W. Va. 186, 183 S.E.2d 703 (1971). This rule is not unlike that observed by the United States Supreme Court, which handles bail applications through an individual Justice in chambers. In their review, the Justices have stated that the rulings of the lower courts with respect to bail are entitled to great deference. *Mecom v. United States,* 434 U.S. 1340, 54 L. Ed. 2d 49, 98

S.Ct. 19 (1977) (Powell, J., in chambers); *Harris v. United States*, 404 U.S. 1232, 30 L. Ed. 2d 25, 92 S.Ct. 10 (1971) (Douglas, J., in chambers); *Sellers v. United States*, 21 L. Ed. 2d 64, 89 S.Ct. 36 (1968) (Black, J., in chambers).

The bail record in the present case demonstrates that the only witnesses presented were those on behalf of the relator. The prosecuting attorney testified about the previous marijuana conviction, but there is no evidence in the bail hearing record to suggest that the defendant was engaged in any extensive narcotics dealing.[4]

The trial court placed a great deal of emphasis on the relator's status as a fugitive from justice at the time the indictments were returned. His waiver of extradition and his punctual appearance at all required pretrial and post-trial hearings, however, counterbalance his status as a fugitive. Relator remained free under the $10,000 bond after his second conviction on March 29, 1979, and this bond was kept in effect until May 1, 1979, when the court imposed sentence and set the bail at $50,000. There is no suggestion in the record that the relator made any attempt to flee during this period.

The trial court addressed a number of other factors brought out in *Hutzler.* Most of these were not adverse to the relator. His financial ability was limited, and the maximum amount of bail that could be raised by his mother and brother was $20,000. The trial court found that relator had no bond forfeitures and that there were no other charges or bonds pending. It did not discuss the character and strength of the evidence, but the focus in this area on a post-conviction bond is whether the appeal would be frivolous. *Sellers v. United States, supra.*

---

[4]Certainly the limited quantities contained in the present convictions, to-wit, twenty-four grams of marijuana and four capsules of ethchlorvynol, do not suggest a volume drug dealer. The $50,000 post-conviction bail bond might have been appropriate if the State had produced some evidence at the bail reduction hearing tying relator to general narcotics trafficking. *See Mecom v. United States,* 434 U.S. 1340, 54 L. Ed. 2d 49, 98 S.Ct. 19 (1977).

The lower court was of the view that the relator did not have many community ties, but this is not substantiated by the record, which shows that his family has had a life-long residency in Jefferson County, and that relator and his wife have lived most of their lives in Jefferson County. A considerable part of the bail originally tendered consisted of the real property of relator's mother.

While the two narcotics convictions are felony offenses, we do not find that either these offenses or the two prior criminal convictions suggest that the relator would commit acts of physical violence that would jeopardize the public.

We are, therefore, of the view that the trial court abused its discretion in refusing to reduce the relator's bond from $50,000 on both offenses, and conclude that a bond in the amount of $20,000 for both offenses is reasonable.

There can be no doubt as to the propriety of the writ of habeas corpus to test the question of bail. *State ex rel. Hutzler v. Dostert, supra; State ex rel. Ghiz v. Johnson, supra.* In *Doyle, supra,* a habeas corpus proceeding, this Court addressed the postponement of an execution of sentence and found the right to be mandatory. The United States Supreme Court has permitted the utilization of habeas corpus to test a variety of restraints on liberty, other than the traditional physical restraint. *See, e.g., Hensley v. Municipal Court,* 411 U.S. 345, 36 L. Ed. 2d 294, 93 S.Ct. 1571 (1973) (habeas corpus available to test restraint where relator released on bail); *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 35 L. Ed. 2d 443, 93 S.Ct. 1123 (1973) (Alabama prisoner could bring habeas corpus in Kentucky to compel trial action on Kentucky detainer on speedy trial theory); *Carafas v. LaVallee,* 391 U.S. 234, 20 L. Ed. 2d 554, 88 S.Ct. 1556 (1968) (habeas corpus action not defeated by subsequent release of prisoner); *Jones v. Cunningham,* 371 U.S. 236, 9 L. Ed. 2d 285, 83 S.Ct. 373 (1963) (parolee could invoke habeas corpus). Here, the failure to follow the manda-

tory requirement to postpone the sentence increases the severity of the defendant's confinement, and in that sense imposes an additional restraint.[5]

For the foregoing reasons, we award a moulded writ of habeas corpus directing that relator be released from the custody of respondent and transferred to the Circuit Court of Jefferson County, where postponement of the execution of sentence must be granted under W. Va. Code, 62-7-1, and postconviction bail set in the amount of $20,000.

*Writ as moulded awarded.*

---

[5]While recognizing that a habeas corpus remedy is available where a postponement of sentence is not granted on request, we do not imply that a proceeding in mandamus or prohibition is not an available alternative. Here, because a bail question was also involved, both questions were capable of being resolved in the habeas corpus proceeding.